IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF HAZLETON; THE HAZLETON CITY COUNCIL; AND JEFF CUSAT, in his official capacity as Mayor of the City of Hazleton, | : | CASE NO. 3:25-CV-45 |
| | : | MEHALCHICK, J. |
| Defendants. | : | |

## **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants, the City of Hazleton ("City"), the Hazleton City Council ("City Council"), and Mayor Jeff Cusat ("Mr. Cusat" or "Mayor") (collectively, "Defendants"), by and through their undersigned counsel, submit their brief in support of their motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (See Doc. 8).

### I. Procedural History

The United States of America ("Plaintiff" or "DOJ") filed this lawsuit on January 7, 2025 alleging that Defendants violated Section 2 of the Voting Rights Act ("VRA") by maintaining an at-large voting system to elect city council members that allegedly diluted the voting power of the Hispanic voting age population ("VAP")

1

in Hazleton. (See Doc. 1, generally.) On January 8, 2025, Defendants waived service of summons. (Doc. 5). On March 10, 2025, Defendants filed their motion to dismiss the complaint, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 8). Pursuant to Local Rule 7.5 of the Middle District of Pennsylvania, Defendants now file their comprehensive brief in support of their motion.

## II. Factual Background

In its complaint, Plaintiff alleges that the City's at-large voting system to elect members of city council violates Section 2 of the VRA by allegedly diluting the voting power of the Hispanic community within the City. (Doc. 1, ¶ 10). Presently, the City's council is comprised of five (5) members—all elected at-large to represent the entire city—and who serve four (4) year terms. (Id. at ¶ 11). To support its voter dilution theory, Plaintiff asserts that the City's VAP is 22,216, according to 2020 Census data. (Id. at ¶ 12). Approximately, 39% of the VAP are white non-Hispanic whereas 57% of the VAP are Hispanic. (Id.) In addition to census data, the complaint generally refers to recent election results between 2014 and 2023 (without citing any vote tallies) as circumstantial evidence that the City's at-large voting system violates the VRA. (Id. at ¶ 16).

The DOJ also recites "[s]ignificant socioeconomic disparities" between the City's non-Hispanic and Hispanic residents such as poverty levels, unemployment rates, and educational attainment levels that also "hinder the ability of Hispanic

2

residents to participate effectively in the political process." (Id. at ¶¶ 23-26). Moreover, according to the DOJ, language barriers inhibit Hispanic residents ability to "obtain critical government services." (Id. at ¶ 27). Plaintiff also details how "low voter turnout among Hispanic voters" contributes to a lack of political success at the ballot box. (Id. at ¶ 28).

### III. Legal Standard

A pleading in federal court "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A motion to dismiss should be granted unless the complaint "has facial plausibility" and pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 550 U.S. 544, 556 (2007)). A district court is not bound to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555; also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). A pleading must provide "more than an unadorned, the defendant-unlawfully-harmed-me-accusation," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555), and should be dismissed if it offers little more than "labels and conclusions" that equal a rote "formulaic recitation of legal elements." Twombly, 550 U.S. at 555.

A court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97, 99, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The key component to this analysis, therefore, is to look at what was actually alleged in the pleadings. Id. Importantly, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. California Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004)(citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

IV. **Argument**

    a. **Mayor Jeff Cusat And The Hazelton City Council Should Be Dismissed As Defendants Because Claims Brought Against Individual Office Holders In Their Official Capacities Are In Fact Brought Against the Municipality Itself.**

As a general rule, lawsuits brought against elected or appointed public officials in their "official capacities" are "indistinguishable from claims against the governmental entity that employs the official." See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("Official-capacity suits...generally represent only another way of pleading an action against an entity of which an officer is an agent.") In the instant matter, the DOJ seeks declarative and injunctive relief. (Doc. 1, p. 9 of 10). Even if it prevails on its Section 2 VRA claim, Plaintiff's declaratory and injunctive relief would require that the City devise a new electoral system to elect city council members—transitioning from at-large to district voting. (Id.) However,

4

the City could only devise and implement such a system through its elected officials—principally the mayor and city council—acting as the City's agents. Accordingly, Plaintiff's Section 2 VRA claim against City Council and the Mayor are nothing more than redundant claims against the City itself. Accordingly, City Council and the Mayor should be dismissed—with prejudice—as additionally named defendants.

### b. Plaintiff Has Failed To Plead A Viable Voting Rights Act Claim Against The City Of Hazleton And The Complaint Should Be Dismissed.

A violation of Section 2 of the VRA is established if "based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens...in that its members have less opportunity to participate in the political process and to elect representatives of their choice." See Allen v. Milligan, 599 U.S. 1, 14 (2023) (citing the VRA).

At-large voting is not "*per se* violative of minority voters' rights." Thornburg v. Gingles, 478 U.S. 30, 48 (1986). To prevail under its "vote dilution" claim, pursuant to Section 2 of the VRA, the DOJ must plead and prove that "the use of a multimember electoral structure operates to minimize or cancel out [minority voters'] ability to elect their preferred candidates." Id. To satisfy its burden, Plaintiff must "demonstrate that [the minority group] is sufficiently large and geographically

5

compact to constitute a majority in a single member district." Id. at 50. Also, Plaintiff must establish that it "is politically cohesive." Id. at 51. Lastly, the DOJ must show that "the white majority votes sufficiently as a bloc to enable it—*in the absence of special circumstances*, such as the minority candidate running unopposed,...usually to defeat the minority's *preferred* candidate." Id. (emphasis added). The third prong of the Gingles test tends to prove "that submergence in a white multimember district impedes its ability to elect its chosen representatives." Id.; also Jenkins v. Manning, 116 F.3d 685, 690-691 (3d Cir. 1997) (citing the Gingles factors) (internal citation omitted); also Milligan, 599 U.S. at 17 ("For the past forty years, we have evaluated claims brought under § 2 using the three-part framework developed in [Gingles].")

Section 2 of the VRA, amended in 1982, specifically prohibits proportional representation. 52 U.S.C. § 10301(b) ("...Provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."); Milligan, 599 U.S. at 28 ("Forcing proportional representation is unlawful and inconsistent with [The U.S. Supreme Court's] approach to implementing [Section 2 of the VRA].") Accordingly, the VRA does not mandate that the percentage of the VAP in the City—almost 2/3 Hispanic—guarantees that three seats of a five-member city council should be awarded to a Hispanic elected official. Id.

Plaintiff's complaint relies upon unsupported and irrelevant allegations to attempt to satisfy the pleading requirements imposed simultaneously by Twombly-Iqbal and Gingles, *supra*. The complaint clearly fails to allege any relevant allegations to support the second and third Gingles criteria. Application of the Gingles factors is fact-dependent but must be laser-focused on an "appraisal of the design and impact of the contested electoral mechanisms." Gingles, 478 U.S. at 79.

Here, the DOJ has utterly failed to demonstrate that the City's at-large voting system "operates to minimize or cancel out [minority voters'] ability to elect their preferred candidates." Gingles, 478 U.S. at 48. By its own admission, many factors—independent of the City's at-large voting mechanism—explain a Hispanic candidate's inability to prevail at the ballot box, which range from poor voter turnout to the ordinary grind of politics like fundraising and securing endorsements. (Doc. 1, ¶¶ 28-29, & 32); see also Milligan, 599 U.S. at 25 ("Individuals thus lack an equal opportunity to participate in the political process when a State's *electoral structure* operates in a manner that 'minimizes or cancels out their voting strength.'") (emphasis added). Here, the crux of the DOJ's complaint takes aim not at the City's at-large electoral system but at societal inequality itself, which is not a basis to support a Section 2 VRA claim.

To the extent that the complaint attacks voting mechanisms at all, the DOJ takes aim at voting procedures that are not even within the City's control such as the

conduct of poll workers on Election Day, which are county not City employees. (Doc. 1, ¶ 29) ("Some poll workers have prohibited [limited-English-proficient] voters from using assistors of choice. Because of the lack of language assistance, some Spanish-speaking LEP voters experience difficulties or are unable to effectively cast ballots. And an unknown number are deterred from even trying.") The City plays no role in training poll workers or directing the manner in which elections are conducted on the ground at the polling precinct. This is strictly the domain of the County Bureau of Elections, which is not a party to this lawsuit. Low voter turnout as well as language barriers are issues that will remain regardless of whether the City's at-large voting system remains intact or if Plaintiff prevails to force the City to switch to single-member districts for city council. Accordingly, these trends fatally undermine Plaintiff's contention that the at-large voting system violates the VRA and is a systemic barrier to the Hispanic community's participation in the electoral process and their ability to select members of their choice.

Section 2 of the VRA is not a vehicle to cure "socioeconomic disparities" in employment and education either. (Id. at ¶¶ 24-27). These "disparities" may be the impetus behind the DOJ's lawsuit; however, none of these allegations serve as proof of any of the three critical elements established by the Gingles test. Moreover, Section 2 of the VRA does not concern itself with "the defeat of individuals in

particular electoral contests" but instead "the evil to be avoided is the subordination of minority groups in American politics." Gingles, 478 U.S. at 57.

Plaintiff also cites an unnamed Hispanic candidate who claims receiving threatening phone calls that included "people yelling obscenities." (Doc. 1, ¶ 30). Even if accepted as true, this Court is well-aware that a citizen yelling obscenities at a political candidate is neither new in American politics or against the law. Also, while the complaint only states that the unnamed candidate "*believed* the calls were tied to anti-Hispanic sentiment," it does not state that any derogatory comments were hurled at this individual. Even so, the alleged inflammatory comments from an unidentified caller (who may not even be a resident of the City) cannot fairly be attributed to Defendants. More importantly, intentional racial discrimination or animus is not even an element of Plaintiff's vote-dilution claim under the VRA. Milligan, 599 U.S. 1 at 25 ("…we have reiterated that § 2 turns on the presence of discriminatory effects, not discriminatory intent.") (citing Chisom v. Roemer, 501 U.S. 380, 403-04 (1991)); also (Doc. 1, ¶ 21). These allegations have no bearing on the sole VRA claim advanced by the DOJ and therefore, they cannot be utilized to salvage Plaintiff's complaint from dismissal.

Predominantly, Plaintiff relies upon bare, conclusory allegations that mimic the elements of a Section 2 claim under the VRA, which does not comport with the well-worn Twombly-Iqbal plausibility standard. In addition to burdening its

complaint with the irrelevant allegations cited above, the DOJ litters the rest of its complaint with only threadbare allegations regarding the compactness of the Hispanic community (Doc. 1, ¶ 14), the political cohesiveness of the Hispanic community (Id. at ¶ 15), the degree of racial polarization in previous city council races (Id. at ¶ 19), and that the non-Hispanic white voters in the City vote sufficiently as a block to defeat minority candidates (Id. at ¶ 20).

As this Court recently held in Aquino v. Hazleton Area School District, 3:24-cv-00206, (M.D. Pa. October 28, 2024) (involving a similar Section 2 VRA claim against the school district's at-large voting method), such conclusory allegations that "the Hispanic community in the [Hazleton Area School District] is politically cohesive is likely insufficient as a conclusory recital of the necessary elements of this claim." Aquino, 2024 WL 4592346 *8 (M.D. Pa. October 28, 2024). In denying the school district's 12(b)(6) motion, this Court noted Aquino's inclusion of precinct level vote-tallies in the complaint as necessary to defeat the motion to dismiss. Id. No such detail appears anywhere in DOJ's complaint. Without citing any data, the DOJ alleges that "Hispanic voters…have regularly voted for Hispanic candidates in recent elections for Hazleton City Council, Hazleton Mayor, and other state and county offices." (Doc. 1, ¶ 15). As this Court already found in Aquino, such threadbare allegations and conclusions of law are not sufficient to evade a 12(b)(6) motion to dismiss.

At best, the DOJ has merely established that the City has a substantial non-white Hispanic population; however, this Court "may not assume from a group of voters' race that they think alike, share the same political interests, and will prefer the same candidates at the polls, and therefore, have a strong voting preference to review evidence of polarized voting." Aquino, 2024 WL 4592346 at *8 (internal citation omitted). Accordingly, since all that DOJ relies upon is the ethnic makeup of the City, its VRA claim should be dismissed entirely. See Shaw v. Reno, 509 U.S. 630, 657 (1993) ("Racial gerrymandering, even for remedial purposes, may balkanize us into competing racial factions; it threatens to carry us further from the goal of a political system in which race no longer matters.")

## V. Conclusion

For any or all of the foregoing reasons, Defendants' motion to dismiss (Doc. 8) should be granted in its entirety.

Respectfully submitted,

/s Drew P. McLaughlin
Drew P. McLaughlin
I.D. No. 324430
John G. Dean
I.D. No. 76168
**Elliott Greenleaf & Dean, P.C.**
15 Public Square
Suite 210
Wilkes-Barre, PA 18701

/s/ Sean W. Logsdon
Sean W. Logsdon
I.D. No. 93096
85 Drasher Road
Drums, PA 18222

DATED: March 24, 2025

# CERTIFICATE OF SERVICE

I, Drew P. McLaughlin, hereby caused to be served on this day a true and correct copy of the foregoing brief in support upon all counsel of record <u>via</u> ECF as follows:

Michael J. Butler, Esq.
Civil Rights Coordinator
1501 N. 6th Street
Box 202
Harrisburg, PA 17102

R. Tamar Hagler, Esq.
John "Bert" Russ, IV, Esq.
Bruce I. Gear, Esq.
Tharuni A. Jayaraman, Esq.
Zachary A. Newkirk, Esq.
U.S. Department of Justice
Voting Section, Civil Rights Division
950 Pennsylvania Avenue NW
4CON 8th Floor
Washington, D.C. 20530

/s Drew P. McLaughlin
Drew P. McLaughlin

Date: March 24, 2025